UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PINE POLLY, INC.,
    Plaintiff,

                                         CIVIL ACTION NO.
        v.                               13-11302-NMG

INTEGRATED PACKAGING FILMS IPF, INC.,
    Defendant.


**REPORT AND RECOMMENDATION RE:**
**DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**
**(DOCKET ENTRY # 7)**

**February 27, 2014**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss certain counts of a complaint filed by plaintiff Pine Poly, Inc. ("plaintiff"). (Docket Entry # 7). Defendant Integrated Packaging Films IPF, Inc. ("defendant") seeks dismissal for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P. ("Rule 12(b)(6)"), and for failure to comply with Rule 9(b), Fed.R.Civ.P. ("Rule 9(b)"). (Docket Entry # 7). Plaintiff opposes the motion. (Docket Entry # 17). After conducting a hearing, this court took the motion under advisement.

PROCEDURAL BACKGROUND

Plaintiff initially brought this action in the Massachusetts Superior Court Department (Essex County) on April 29, 2013. On the basis of diversity jurisdiction, defendant

removed the action to this court.  The complaint alleges six

counts:  (1) breach of the implied covenant of good faith and

fair dealing (Count I); (2) breach of contract (Count II); (3)

unjust enrichment (Count III); (4) fraud and deceit (Count IV);

(5) intentional interference with business relationships (Count

V); and (6) violation of Massachusetts General Laws chapter 93A

("chapter 93A") (Count VI).  (Docket Entry # 6).  Defendant

seeks to dismiss counts III, IV, V and VI.

## STANDARD OF REVIEW

To survive a motion to dismiss, the complaint must assert

factual allegations that when taken as true demonstrate a

plausible claim for relief, even if proof of the facts is

improbable.  Bell Atlantic, Corp. v. Twombly, 550 U.S. 544, 555-

558 (2007).  Discarding legal conclusions and taking the facts

in the governing complaint as "true and read in a plaintiff's

favor even if seemingly incredible," the complaint "must state a

plausible, but not a merely conceivable, case for

relief."  Sepúlveda-Villarini v. Dept. of Educ., 628 F.3d 25, 29

(1st  Cir. 2010); accord Gorelik v. Costin, 605 F.3d 118, 121 (1st

Cir. 2010).  In considering the merits of a motion to dismiss,

the court's review is limited "to the facts alleged in the

pleadings . . . [and] documents attached as exhibits" such as

the contract at bar.  Urman v. Novelos Therapeutics, Inc., 796

F.Supp.2d 277, 281 (D.Mass. 2011).  "[A]ccepting as true all

well-pleaded facts in the complaint and making all reasonable inferences in the plaintiff's favor," Borian v. Mueller, 616 F.3d 60, 64 (1st Cir. 2010), the "factual allegations 'must be enough to raise a right to relief above the speculative level.'"  Gorelik v. Costin, 605 F.3d at 121.

When reviewing claims of fraud, there is an exception to the general rule of notice pleading.  See Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004).  Rule 9(b) requires that, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  This heightened pleading standard serves three purposes:

> (1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a "strike suit"; and (3) to safeguard defendants from frivolous charges which might damage their reputations.

New England Data Servs., Inc. v. Becher, 829 F.2d 286, 289 (1st Cir. 1987).

### FACTUAL BACKGROUND

In or about June 2008, defendant, an "extruder of plastic film products used in the manufacture of thermo formed packaging products," approached plaintiff, a company specializing in the sale and marketing of "post-consumer recycled PET products," about acting as an exclusive sales broker for defendant's products.  (Docket Entry # 6).  Thereafter, the parties met a

number of times to discuss the potential business relationship. Three of the meetings took place in Massachusetts.

In January 2009, they engaged in "negotiations for a formal agreement." (Docket Entry # 6). On June 10, 2009, the parties entered into the exclusive representative agreement ("the Agreement"). For an initial term of three years, the Agreement provided that plaintiff would act as "the exclusive commissioned representative" of defendant's products. (Docket Entry # 6, Ex. A). Plaintiff agreed to sell defendant's products to plaintiff's "current customers" and defendant represented it would allow plaintiff to negotiate sales to "any and all prospective customers of [defendant's] products." (Docket Entry # 6, Ex. A). Also under the Agreement, plaintiff had the right to market and sell defendant's products "in any part of the world" except to a number of companies listed in an attached schedule. (Docket Entry # 6, Ex. A). The Agreement required defendant to pay plaintiff a commission for "each and every sale" of defendant's product. (Docket Entry # 6, Ex. A).

For at least two years, plaintiff "successfully marketed and negotiated the sale of Defendant's products." (Docket Entry # 6). Obstacles arose, however, because defendant could not deliver its "products on a timely basis." (Docket Entry # 6). Additionally, defendant refused to price its products competitively. (Docket Entry # 6). In spite of these

4

challenges, plaintiff continued "to successfully market and sell the Defendant's products pursuant to the terms of the Agreement."  (Docket Entry # 6).

The Agreement provides that either party may terminate the relationship "in the event of a material breach" or "in the event that [plaintiff] should misrepresent [defendant] or cause irreconcilable damages" to any "existing account" of defendant. (Docket Entry # 6, Ex. A).  On or about October 2, 2011, defendant terminated the Agreement.  (Docket Entry # 6).

Notwithstanding the termination, defendant proceeded to use "[p]laintiff's contacts and resources for its own profit" and negotiated sales without providing plaintiff with commissions. Defendant used not only plaintiff's "confidential business information" but also "its privileged customer contacts." (Docket Entry # 6, ¶¶ 27-57).  Construing these facts in plaintiff's favor, defendant obtained the contact information for plaintiff's customers and then used this confidential information to establish sales contacts with itself and these customers without paying plaintiff a commission.  (Docket Entry # 6, ¶¶ 57-58).  Defendant also "intentionally diverted business opportunities and commissions from" plaintiff.  (Docket Entry # 6).  Plaintiff invested more than $320,000 towards the marketing and sale of defendant's product.  (Docket Entry # 6).

DISCUSSION

I.  Unjust Enrichment (Count III)

Count III of the complaint alleges that defendant was unjustly enriched when it unlawfully used plaintiff's "expertise, confidential business information and privileged customer contacts for its own profit." (Docket Entry # 6, ¶ 42). Defendant moves to dismiss the count because a party may not seek recovery for unjust enrichment where, as here, it also seeks recovery for breach of contract. (Docket Entry # 7). In response, plaintiff argues that parties are permitted to plead alternate theories of recovery and, while plaintiff may not recover under both theories, it should be permitted to include such alternate theories in the complaint. (Docket Entry # 17).

The Federal Rules of Civil Procedure expressly permit alternative pleading. See Fed.R.Civ.P. 8(a)(3). Furthermore, "a party may state as many claims as it has" in a complaint "regardless of its consistency." Fed.R.Civ.P. 8(d)(3). "A plaintiff may" therefore "plead inconsistent theories of relief in the alternative." Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013); see Bachorz v. Miller-Forslund, 703 F.3d 27, 34-35 (1st Cir. 2012) ("request for reimbursement for replacing the roof is best read as an alternative theory for relief in the event that the court denied specific performance, and is entirely permissible under Rule 8(d)").

It is true that an unjust enrichment claim does not lie where the parties have an enforceable express contract.  See Szulik v. State Street Bank and Trust Co., 935 F.Supp.2d 240, 274 (D.Mass. 2013) ("claim for unjust enrichment must fail because such equitable claims are precluded by the existence of the parties' contractual agreements"); accord Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 130 (1st Cir. 2006) ("Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment").  At this stage in the litigation, however, the unjust enrichment claim is not subject to dismissal.  Szulik, 935 F.Supp.2d at 274 (although existence of "contractual relationship may ultimately bar the unjust enrichment claim, it does not warrant the dismissal of that claim at this point in the litigation"); Lass v. Bank of America, N.A., 695 F.3d 129, 140 (1st Cir. 2012) (although "damages for breach of contract and unjust enrichment are mutually exclusive, . . . it is accepted practice to pursue both theories at the pleading stage") (citation to Platten, 437 F.3d at 130, omitted).

## II.  Fraud & Deceit (Count IV)

Count IV of the complaint alleges a claim for fraud and deceit.  Defendant moves to dismiss the count for failure to comply with Rule 9(b).  As stated in Count IV, defendant "knowingly and intentionally made misrepresentations to

Plaintiff that it would use it as the exclusive distributor of
its products." (Docket Entry # 6, ¶ 45). The count, which
incorporates the prior paragraphs of the complaint, also states
that, "Plaintiff reasonably relied upon the misrepresentations
of the Defendant and hired employees and expended resources on
the project." (Docket Entry # 6, ¶ 46). It also alleges that
plaintiff expended $320,000 to develop a "business base for the
Defendant's products." (Docket Entry # 6, ¶ 47).

As previously noted, Rule 9(b) provides that, "a party must
state with particularity the circumstances constituting fraud or
mistake." Fed.R.Civ.P. 9(b). "Malice, intent, knowledge, and
other conditions of a person's mind may be alleged
generally." Id. With respect to fraud, the particularity
requirements "mandat[e] 'specifics about the time, place, and
content of the alleged false representations.'" Woods v. Wells
Fargo Bank, N.A., 733 F.3d 349, 358 (1st Cir. 2013)
(quoting Juárez v. Select Portfolio Servicing, Inc., 708 F.3d
269, 279–80 (1st Cir. 2013)). The First Circuit in Woods
considered a complaint insufficient because, although it
"include[d] a basic recitation of the elements of fraud, [Woods
did] not indicate when, where, and how often the allegedly false
statements were made or what, specifically, was stated." Id.
The complaint was also "wholly silent on the issue of her actual
reliance." Id.

Plaintiff contends that it met this heightened pleading standard because the complaint alleges that on June 10, 2009, defendant knowingly misrepresented its position that it would use plaintiff as the sole distributor of its products. (Docket Entry # 6, ¶¶ 9 & 45). The allegation fails to provide the where and how often defendant made the statement and "what, specifically, was stated." Id. Like the complaint at issue in Woods, plaintiff does little more than recite the elements of a fraud claim under Massachusetts law. Accordingly, the complaint fails to satisfy the requirements of Rule 9(b).

In lieu of dismissal, plaintiff requests an opportunity to amend the complaint. Plaintiff has not filed previous complaints deficient under Rule 9(b) and the complaint sets forth an outline of plausible fraud. The circumstances therefore warrant allowing an opportunity to amend the complaint. See Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 281 (1st Cir. 2013) (district court abused its discretion in denying amendment after Rule 9(b) dismissal because "totality of the circumstances" dictated allowing plaintiff opportunity to replead fraud and chapter 93A claims at "this first procedural stage"). The recommended dismissal of Count IV is therefore without prejudice. Plaintiff may seek leave to amend the complaint to raise a fraud and deceit claim

as long as it complies within any future case management
schedule.

III.   <u>Intentional Interference with Business Relationships</u>
<u>(Count V)</u>

In Count V, plaintiff alleges that defendant intentionally
interfered with plaintiff's third party business relationships.
Specifically, the complaint asserts that defendant used
"Plaintiff's contacts and resources for [defendant's] own profit
by negotiating sales" and that defendant "intentionally diverted
business opportunities" from plaintiff.  (Docket Entry # 6).
Defendant seeks to dismiss Count V because it fails to allege
that defendant interfered with plaintiff's relationships with
third parties and/or that defendant acted with an improper
motive or means.

The required elements to establish an interference with an
advantageous business relationship are:

> "(1) the plaintiff has a business relationship for economic
> benefit with a third party, (2) the defendants knew of that
> relationship, (3) the defendants interfered with that
> relationship through improper motive or means, and (4) the
> plaintiff's loss of the advantage resulted directly from
> the defendants' conduct."

<u>Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc.</u>,
864 N.E.2d 518, 541 (Mass.App.Ct. 2007) (quoting <u>McNamee v.</u>
<u>Jenkins</u>, 754 N.E.2d 740, 745 (Mass.App.Ct. 2001)); <u>see</u> <u>Swanset</u>
<u>Development Corporation v. City of Taunton</u>, 668 N.E.2d 333, 338

(Mass. 1996) (citing <u>United Truck Leasing Corporation v. Geltman</u>, 551 N.E.2d 20(Mass. 1990)).  The tort extends to future business relationships only where there is "a 'probable future business relationship anticipating a reasonable expectancy of financial benefit.'"  <u>Singh v. Blue Cross/Blue Shield of Massachusetts, Inc.</u>, 308 F.3d 25, 48 (1st Cir. 2002) (quoting lower court's opinion with approval); <u>United Air Lines, Inc. v. Gregory</u>, 716 F.Supp.2d 79, 87 (D.Mass. 2010); <u>see also</u> <u>Guest-Tek Interactive Entertainment Inc. v. Pullen</u>, 731 F.Supp.2d 80, 87 (D.Mass. 2010) (first element "not satisfied 'where a plaintiff alleges interference only with its general efforts to compete for prospective customers in the market at large'").

Defendant correctly points out that the tort does not encompass interference by defendant with its own business relationship with plaintiff.  Rather, defendant's interference must be with an advantageous business relationship between plaintiff and a third party.  <u>See</u> <u>Cavicchi v. Koski</u>, 855 N.E.2d 1137, 1141 (Mass.App.Ct. 2006); <u>Guest-Tek Interactive Entertainment Inc. v. Pullen</u>, 731 F.Supp.2d at 86.  Thus, to satisfy the first element, "'the plaintiff must prove that (1) he had a business relationship for economic benefit with *a third party*.'"  <u>Cavicchi</u>, 855 N.E.2d at 1141 (emphasis added); <u>Guest-Tek</u>, 731 F.Supp.2d at 86.

11

Here, the complaint sets out a plausible claim that defendant interfered with plaintiff's existing customers or clients as well as with plaintiff's probable future business relationships with customers and clients where plaintiff had a reasonable expectancy of financial benefit.  The Agreement allowed plaintiff to negotiate and conclude sales of defendant's products to plaintiff's "current Customers" or other third parties.  (Docket Entry # 6, p. 11) ("Pine Poly . . . agrees to sell, promote, and purchase the Products to its current Customers").  The Agreement also entitled plaintiff to "a commission on each and every sale within forty five (45) days from the shipment date."  (Docket Entry # 6, p. 11).  Defendant, however, unilaterally terminated the Agreement and "diverted sales away from the Plaintiff for which it is entitled to commissions."  (Docket Entry # 6, ¶¶ 20, 41 & 50).  Using plaintiff's "privileged customer contacts," defendant established sales contracts for itself.  (Docket Entry # 6, ¶¶ 19, 20, 27, 28, 41, 42 & 47).  Reasonably construing the complaint, it therefore alleges that defendant terminated the Agreement and diverted plaintiff's existing or probable future sales with its customers in which plaintiff had a reasonable expectancy of a commission.  As such, dismissal on the basis of a failure to allege a plausible claim that defendant interfered

with plaintiff's relationships with third parties is not warranted.

Turning to defendant's argument that there exists no improper motive or means, the improper conduct must extend "'beyond the interference itself.'" Cavicchi, 855 N.E.2d at 1142; accord United Truck, 551 N.E.2d at 23-24; James L. Miniter Ins. Agency, Inc. v. Ohio Indemnity Co., 112 F.3d 1240, 1250 (1st Cir. 1997) (plaintiff "must demonstrate wrongfulness beyond the interference itself").  The standard is also the use of "improper motive or improper means; the plaintiff need not prove both."  Kurker v. Hill, 689 N.E.2d 833, 838 (Mass.App.Ct. 1998) (emphasis added).  A "legitimate advancement of [defendant's] own economic interest" does not constitute an improper motive.  Pembroke Country Club, Inc. v. Regency Savings Bank, F.S.B., 815 N.E.2d 241, 246 (Mass.App.Ct. 2004); see United Truck, 551 N.E.2d at 24 (defendant's motives "to benefit his customers and himself financially" are insufficient); see, e.g., TalentBurst, Inc. v. Collabera, Inc., 567 F.Supp.2d 261, 269 (D.Mass. 2008) ("offering of a job to a competitor's at-will employee, including one that provides better pay and benefits, does not as matter of law constitute improper means").  In contrast, violation of "a statute or a rule of common law" or use of threats, misrepresentations of facts or "other improper means" is sufficient.  United Truck,

551 N.E.2d at 24.  Section 767 of the <u>Restatement (Second) of</u>
<u>Torts</u> (1979) ("section 767"), cited with approval in <u>United</u>
<u>Truck</u>, 551 N.E.2d at 24 n.10 (factors in section 767 "may be
helpful in determining whether an act of interference was
committed with an improper motive or by improper means"), sets
out the following factors relevant in determining whether
interference with the business relationship is improper:

> (a) the nature of the actor's conduct, (b) the actor's
> motive, (c) the interests of the other with which the
> actor's conduct interferes, (d) the interests sought to be
> advanced by the actor, (e) the social interests in
> protecting the freedom of action of the actor and the
> contractual interests of the other, (f) the proximity or
> remoteness of the actor's conduct to the interference, and
> (g) the relations between the parties.

<u>Restatement (Second) of Torts</u> § 767 (1979).

Drawing reasonable inferences from the facts in the
complaint, defendant diverted the sales of its products that
plaintiff arranged with plaintiff's customers for itself.
Defendant thereby deprived plaintiff of "commissions . . . for
which the Plaintiff is entitled to be compensated." (Docket
Entry # 6).  In usurping sales from plaintiff, defendant "used
Plaintiff's contacts and resources" to negotiate sales that
deprived plaintiff of its commissions.  (Docket Entry # 6).
Indeed, defendant used plaintiff's "confidential business
information and its privileged customer contacts." (Docket
Entry # 6, ¶ 57).  Defendant's motive was to hurt plaintiff's

relationships with its customers and to divert such customers
away from plaintiff.  The allegations therefore go beyond simply
acting for its own motives to advance its own financial
interests.  Drawing the reasonable assumption that plaintiff's
existing or potential customers are, at least prior to
disclosure to defendant, proprietary information, defendant
sought to interfere with the sales between plaintiff and its
customers to deprive plaintiff of its commissions.  In light of
such allegations, the complaint withstands dismissal based on
the absence of improper motive or means.  See Stonewood Capital
Management, Inc. v. Giner, Inc., 2011 WL 4944326, *4 (D.Mass.
Oct. 18, 2011) (denying motion to dismiss based on improper
motive or means because defendant, "relying improperly on
confidential information contained in the LOI, interfered with
plaintiff's contemplated economic benefit by offering a
competing deal to purchase the Company on substantially the same
terms as the LOI"); see also Cherick Distributors, Inc. v. Polar
Corp., 669 N.E.2d 218, 221 (Mass.App.Ct. 1996).

IV.  Violation of Chapter 93A (Count VI)

     Count VI alleges that defendant's conduct, including its
unilateral termination of the Agreement and breach of the
covenant of good faith and fair dealing, constitutes a violation
of section 11 of chapter 93A.  (Docket Entry # 6).  In support
of the motion to dismiss Count VI, defendant argues that

15

plaintiff's contention that defendant breached the Agreement cannot support a chapter 93A claim.  Defendant further asserts that the complaint's omission of any objectionable conduct occurring in Massachusetts mandates dismissal because the misconduct must "occur[] primarily and substantially within the commonwealth."  Mass.Gen.L. ch. 93A, § 11.

Defendant correctly posits that a breach of contract alone is insufficient to sustain a chapter 93A claim.  See Stagikas v. Saxon Mortgage Servs., Inc., 795 F.Supp.2d 129, 137 (D.Mass. 2011).  Notwithstanding this, "a party who breaches a contract in a deliberate attempt to obtain the benefits of the contract, and to avoid fulfilling its own obligations under it, may have committed an unfair or deceptive act under chapter 93A."  Id.; see also Ecological Fibers, Inc. v. Kappa Graphic Bd., B.V., 345 F.Supp.2d 13, 15 (D.Mass. 2004) ("In some cases the facts giving rise to a breach of contract claim will also give rise to a 93A claim").  For example, the plaintiff in Kappa alleged that the defendant, at the time it entered into a contract with the plaintiff, did not intend to fulfill its obligations.  Kappa, 345 F.Supp.2d at 15.  Rather, the defendant entered into the contract for the deceptive purpose of fostering relations with the plaintiff's business contacts.  Id.  The court in Kappa therefore denied a motion to dismiss the chapter 93A claim.  Id.  Here too, defendant intentionally breached the

Agreement with plaintiff in order to deprive plaintiff of the
commissions "for which it is entitled." (Docket Entry # 6).
Defendant obtained the benefits of the Agreement by using
plaintiff's resources, such as its customers, "to establish
sales contracts for itself." (Docket Entry # 6). Accordingly,
the chapter 93A claim is not subject to dismissal based solely
on the argument that a mere breach of contract does not rise to
the level of a chapter 93A violation.

Defendant next asserts that because the complaint fails to
allege that defendant's deceptive conduct occurred in
Massachusetts, the chapter claim 93A is subject to dismissal.
As previously indicated, section 11 requires that "the actions
and transactions constituting the . . . unfair or deceptive act
or practice [have] occurred primarily and substantially within
the commonwealth." Mass.Gen.L. ch. 93A, § 11. Whether the
misconduct "occurred primarily and substantially within the
commonwealth is not a determination that can be reduced to any
precise formula." Kuwaiti Danish Computer Co. v. Digital Equip.
Corp., 781 N.E.2d 787, 798 (Mass. 2003); accord Clinton Hosp.
Ass'n v. Corson Grp., Inc., 907 F.2d 1260, 1266 (1st Cir. 1990)
(there is no "bright line test to determine when actions or
transactions violating ch. 93A occur primarily and substantially
within the Commonwealth"). The key question is "whether the
center of gravity of the circumstances that give rise to the

claim is primarily and substantially within the

Commonwealth." Kuwaiti, 781 N.E.2d at 799.  The center of

gravity focuses "on 'the purpose and scope' of Chapter 93A."  In

re Pharmaceutical Industry Average Wholesale Price Litigation,

582 F.3d 156, 194 (1st Cir. 2009).  The purpose of chapter 93A is

"to 'encourage more equitable behavior in the marketplace and

impose liability on persons seeking to profit from unfair

practices.'"  Id.  Defendant bears the underlying burden to show

that the conduct did not occur primarily and substantially in

Massachusetts.  See Id.; Shimizu Corp. v. Dow Roofing Systems,

LLC, 2013 WL 5513035, *18 (D.Mass. Sept. 27, 2013) ("'burden is

upon the defendant to disprove the "primarily and substantially"

condition'").

    The center of gravity inquiry examines the actionable

conduct as opposed to conduct that is neither unfair nor

deceptive.  See Kuwaiti, 781 N.E.2d at 800 (because "[t]here was

nothing unfair or deceptive about those policies, . . . the fact

that the policies were adopted and applied in Massachusetts . .

. cannot be considered" as to whether "conduct occurred

'primarily and substantially' in Massachusetts"); Spring

Investor Services, Inc. v. Carrington Capital Management, LLC,

2013 WL 1703890, *12 (D.Mass. April 18, 2013) (inquiry focuses

on "the actionable conduct said to give rise to the violation;

other conduct, no matter where it takes place, may not be

considered on the question"). The three meetings that took place in Massachusetts to discuss business arrangements that preceded the June 10, 2009 agreement fall into this category. The complaint fails to identify or reasonably imply anything unfair or deceptive about the meetings that took place at undetermined times in the Commonwealth. At best, the complaint only states that defendant did not intend to comply with the final agreement.

"[T]he place of conduct and the 'situs of loss'" may be germane to the center of gravity test. Auto Shine Car Wash Systems, Inc. v. Nice 'N Clean Car Wash, Inc., 792 N.E.2d 682, 685 (Mass.App.Ct. 2003). Whether the plaintiff received or acted upon the misconduct may also factor into an analysis. See Kuwaiti, 781 N.E.2d at 799; see also Uncle Henry's Inc. v. Plaut Consulting Co., Inc., 399 F.3d 33, 39 & 44-45 (1st Cir. 2005) (recognizing that Kuwaiti "did not hold or imply that the factors identified by the district court," which included place where deceptive statements were received and acted upon, were "irrelevant" and affirming decision). The center of gravity approach however does not turn upon "any particular factor or factors" but instead examines the misconduct in light of the purpose and scope of chapter 93A. Kuwaiti, 781 N.E.2d at 799.

Depriving a Massachusetts company such as plaintiff of sales is also relevant, albeit not determinative of whether the conduct took place primarily and substantially within Massachusetts.  See Fishman Transducers, Inc. v. Paul, 684 F.3d 187, 197 (1st Cir. 2012) ("[t]hat a Massachusetts company was arguably deprived of sales may be relevant, . . . but here the direct impact of the deception—to the extent it occurred—was on customers all over the country").  The facts in the complaint show that plaintiff, a Massachusetts corporation located in Marblehead, experienced the financial injuries caused by the deception in Massachusetts.  See In re Pharmaceutical Industry Average Wholesale Price Litigation, 582 F.3d at 194 (noting "that AstraZeneca's conduct directly, and by design, affected physicians in Massachusetts and caused financial injury to payors in Massachusetts").

Beyond the fact that plaintiff experienced the loss in Massachusetts, the complaint gives no indication of the location of the customers, see Fishman Transducers, 684 F.3d at 197, which defendant, a Canadian company, diverted or used to establish sales contracts with itself and thus deprive plaintiff of its earned commissions.  Although defendant "used Plaintiff's contacts and resources for its own profits by negotiating sales in which the Plaintiff has not received commissions" (Docket Entry # 6), the complaint fails to denote the location of such

misconduct or the location of the resources used.  Similarly,

the complaint depicts the misconduct that defendant used

plaintiff's "business information and its customer contacts for

its own profit" (Docket Entry # 6) but fails to articulate where

defendant committed this misconduct or where, if at all,

plaintiff received or acted upon the misconduct.  For example,

if a customer canceled all further negotiations of a sales

contract with plaintiff because defendant diverted the potential

and probable sale for itself using plaintiff's resources, the

cancellation may have taken place at a meeting or communication

with the customer outside or inside the Commonwealth.  Although

defendant is seeking to profit from these unfair practices,

there is little indication that the unfair and deceptive

practices took place primarily in Massachusetts.  Simply stated,

the complaint fails to sufficiently connect the misconduct with

Massachusetts.  Contrary to plaintiff's argument, the presence

of the choice of law clause and the exclusive jurisdiction

clause does not require or establish a center of gravity in

Massachusetts.  See Sonoran Scanners, Inc. v. Perkinelmer, Inc.,

585 F.3d 535, 546 (1st Cir. 2009) ("fact that the Purchase

Agreement provided that Massachusetts law would govern does not

require a finding that the center of gravity for Chapter 93A

liability is in Massachusetts").

21

Neither the complaint nor the Agreement state that the parties executed and entered into the Agreement, which defendant did not intend to perform, in Massachusetts.  Thus, even assuming that this breach of contract amounts to unfair or deceptive conduct, it is essentially neutral.  See Kuwaiti, 781 N.E.2d at 799.

In sum, "the circumstances that give rise to the claim," Id., consist of defendant's wrongful diversion of confidential business information and "privileged customer contacts" as well as commissions.  (Docket Entry # 6). Defendant used plaintiff's resources to establish and profit from sales contracts "for which" plaintiff was "entitled to be compensated."  (Docket Entry # 6).  Plaintiff experienced financial injuries in Massachusetts resulting from these unfair and deceptive actions.  Mindful of the purpose and scope of chapter 93A and applying the Rule 12(b)(6) plausibility standard, the center of gravity did not take place primarily and substantially in Massachusetts.

As previously noted, plaintiff seeks an opportunity to amend the complaint if this court allows any part of the motion to dismiss.  In light of the situs of the loss in Massachusetts and that defendant is seeking to profit from the unfair or deceptive practices, the complaint sets out a colorable claim that the misconduct took place primarily and substantially in

Massachusetts.  Plaintiff is also a Massachusetts corporation with a principal place of business in the state.  Coupled with the preference to decide cases on their merits, <u>see</u> <u>Rodi v. Southern New England School of Law</u>, 389 F.3d 5, 20 (1st Cir. 2004) (noting "'the purpose of pleading is to facilitate a proper decision on the merits'"), plaintiff may seek leave to amend the chapter 93A claim within the time frame of any case management schedule.  <u>See</u> <u>also</u> <u>Eastern Food Services, Inc. v. Pontifical Catholic University Services Ass'n, Inc.</u>, 357 F.3d 1, 8 (1st Cir. 2004).

CONCLUSION

In accordance with the discussion, this court **RECOMMENDS**[1] that the motion to dismiss (Docket Entry # 7) be **ALLOWED** in part and **DENIED** in part.  Counts III and V are not subject to dismissal and counts IV and VI are dismissed without prejudice.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  <u>See</u> Rule 72(b), Fed. R. Civ. P.  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.